United States District Court
Southern District of Texas
**ENTERED**
August 19, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELVIN MARTINEZ-GUARDADO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-25-03305 |
| | § | |
| HIROMICHI KOBAYASHI, TRUSTEE | § | |
| THOMAS M. O'CONNOR, ANTONY | § | |
| BLINKEN, MERRICK GARLAND, | § | |
| MARCO RUBIO, and PAM BONDI,[1] | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER OF DISMISSAL

Petitioner Melvin Martinez Guardado ("Martinez Guardado"), represented by counsel, filed this Amended Petition for a writ of habeas corpus to challenge his extradition, alleging that he will likely be subjected to torture or inhumane conditions in a Honduran prison if returned to that country. Doc. No. 7. Martinez Guardado has also filed a Second Amended Motion for a Stay of Extradition

---

[1] Although the petitioner names several individuals as respondents, as the Warden of the Federal Detention Center in Houston, Texas, where Petitioner is detained, Hiromichi Kobayashi is the proper respondent because he is the petitioner's immediate custodian. *See* Rumsfeld v. Padilla, 124 S. Ct. 2711, 2720 (2004); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained.").

and for a Temporary Stay.  Doc. No. 12.[2]  The Court has carefully

considered the petition, motion, responses, replies, record, and

applicable law and concludes as follows.

## I.    Background and Procedural History

The background facts and procedural history of this case were

set forth in detail in the Court's Memorandum and Order in

Petitioner Melvin Martinez Guardado's previous petition.  *See*

Martinez Guardado v. Kobayashi, *et al.*, Civ. A. No. H-24-4862 (S.D.

Tex. Apr. 3, 2025), at Doc. No. 9 (hereinafter "Martinez Guardado

I").  As stated in Martinez Guardado I, Martinez Guardado is a

lawful permanent resident of the United States currently detained

at the Federal Detention Center in Houston, Texas.  He is accused

in Honduras of homicide.  Pursuant to the extradition treaty

between the United States and Honduras, the Government of Honduras

submitted a formal request for Martinez Guardado's extradition.

*See* In re the Extradition of Melvin Martinez Guardado, a/k/a/ "El

Pelón", Case No. 3:24-mj-00006-1, at Doc. No. 1 (under seal) (S.D.

Tex. Sept. 24, 2024); *see also* The Convention Between the United

States of America and the Republic of Honduras for the Extradition

---

[2] The Second Amended Motion for a Stay (Doc. No. 12) supersedes the other
motions for a stay; accordingly, the other motions for a stay (Doc. Nos.
3, 10) are **DENIED as MOOT**.

of Fugitives from Justice, U.S. — Honduras, Jan. 15, 1909, 37 Stat. 1616, as amended by the Supplementary Extradition Convention between the United States of America and the Republic of Honduras, Feb. 21, 1927, 45 Stat. 2489 (together, "the Treaty").

In November 2024, a magistrate judge conducted an extradition hearing for Martinez Guardado, determined that the requirements for certification[3] were met, certified his extradition, and committed him to the custody of the United States Marshal pending a decision on extradition by the Secretary of State pursuant to 18 U.S.C. § 3186. *See* In re Guardado, Case No. 3:24-mj-00006-1, at Doc. No. 25, at 3 (S.D. Tex. Nov. 19, 2024) (noting that the court's role in the extradition process is limited because "[t]he ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs") (citing Escobedo v. United States, 623 F.2d 1098, 1105 (5th Cir. 1980)). Guardado's sole ground for

---

[3] "A district court must issue a certificate of extradition if the following five requirements are met: (1) the judicial officer has jurisdiction to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive named in the extradition request; (3) the applicable extradition treaty is in full force and effect; (4) the extradition treaty covers the offense for which extradition is requested; and (5) there is sufficient evidence to support a finding of probably cause as to the offense for which extradition is sought." In re Extradition of Guardado, Case No. 3:24-mj-00006-1, Doc. No. 25 at 3 (S.D. Tex. Nov. 19, 2024) (citing 18 U.S.C. § 3184; In re Extradition of Garcia, 825 F. Supp. 2d 810, 826-27 (S.D. Tex. 2011)).

challenging extradition in his certification proceeding was that "the United States failed to establish that the extradition treaty was still in effect between the United States and Honduras." Id.

By letter dated November 20, 2024, the Department of Justice ("DOJ") notified counsel for Martinez Guardado of his options in light of the certification of his extradition. *See* Martinez Guardado I at Doc. No. 7-1 at 2. On December 6, 2024, Martinez Guardado filed Martinez Guardado I. On April 3, 2025, this Court dismissed that petition with prejudice as to any challenge to the Magistrate Judge's certification of his extradition to Honduras; without prejudice to his CAT and FARR Act claim regarding whether extradition to Honduras would subject him to torture because "[t]he rule of non-inquiry restrains the Court from adjudicating the torture issue"; and without prejudice as to the claim that the Secretary of State is violating his due process rights by not complying with his statutory and regulatory obligations to decide the torture claim because the claim was not ripe. Id. at Doc. No. 9 at 8-10.

On July 14, 2025, the Secretary of State sent a letter to Martinez Guardado advising him of the decision to extradite him to Honduras and stating:

> Following a review of all pertinent information,
> including the materials and filings submitted to the

4

> Secretary and the United States District Court for the
> Southern District of Texas on behalf of Mr. Martinez
> Guardado, on July 7, 2025, the Deputy Secretary of State
> decided to authorize Petitioner's surrender to Honduras,
> pursuant to 18 U.S.C. § 3186 and the Extradition Treaty
> between United States and Honduras.

Doc. No. 15 at 6 (citing Gov't Ex. 1). The letter further confirmed
that "the decision to surrender Mr. Martinez Guardado to Honduras
complies with the United States' obligations under the Convention
and its implementing statute and regulations." Id. On July 17,
2025, Martinez Guardado filed the instant petition to challenge
his extradition, together with a motion to stay and exhibits. Doc.
Nos. 1-3. Martinez Guardado subsequently amended his pleadings
(Doc. No. 7) and submitted two amended motions for a stay (Doc.
Nos. 10, 12).

Martinez Guardado argues that Honduran prisons are dangerous
and inhumane. As he did in his previous habeas proceeding,
Martinez Guardado alleges:

> Because his extradition violates the United Nations
> Convention Against Torture ("CAT"), the Foreign Affairs
> Reform and Restructuring Act of 1998 ("FARRAct") (which
> implements observance of the CAT under federal law), the
> State Department's regulations implementing the CAT and
> the FARR Act, the Due Process Clause of the Fifth
> Amendment to the United States Constitution, and the
> Suspension Clause in art. I, § 9, cl. 2 of the United
> States Constitution, Mr. Martinez Guardado requests that
> this Court stay his extradition, grant him a meaningful
> opportunity to be heard on his claim that he would be
> tortured if extradited, conclude that Petitioner's

> extradition is barred by federal law, and order
> Respondents to cancel the Petitioner's extradition, and
> release him from custody.

Doc. No. 7 at 2.

The Government filed a response in opposition, arguing that (1) the court's review of the extradition certification order is limited; (2) the Executive Branch has the primary authority over extraditions, and the Judicial Branch's role is highly limited; (3) the "rule of non-inquiry" precludes the Court from evaluating foreign justice systems in extradition matters; (4) neither the CAT nor the FARR Act provides for judicial review of CAT claims in extradition cases; (5) the Suspension Clause does not require the court to review a CAT claim in extradition cases; (6) Petitioner's out-of-circuit cases and the non-binding concurrence in Munaf v. Geren, 128 S. Ct. 2207, 2228 (2008), do not support his claim. Doc. No. 15. The Government seeks an expedited decision based on the "fast-approaching termination of the Extradition Treaty." Id. at 30.

In his reply regarding the merits of his petition, Martinez Guardado contends that the Court has jurisdiction to consider his claims under the CAT and FARR Act. Doc. No. 17. He points to a "circuit split" regarding whether federal courts are prohibited from considering torture/humanitarian-based challenges in

6

extradition proceedings (in addition to the review that the Secretary of State conducts) and contends that the Government's interpretation of the rule of non-inquiry is "overly restrictive." Id. at 1-8. He contends that the Government's documentation from the Secretary of State is insufficient to satisfy due process and show that the Secretary complied with his obligations. Id. at 9-13.

Regarding the motion for a stay, Martinez Guardado contends that (1) the Government's characterization of Honduras as his "Native Country" is improper because he is a legal permanent resident who works and resides in the United States; (2) the Government's request for an expedited timeline is based not on conduct of the petitioner but on the actions of the Executives in the respective countries; (3) he presents meritorious grounds for seeking meaningful review based on his expert's report and testimony about "the systemically corrupt and brutal Honduran prison system"; (4) in the alternative, he seeks at least a temporary stay to allow him to seek an appeal with the Fifth Circuit. Doc. No. 16 at 6.

## II.  Legal Standards

### A.   28 U.S.C. § 2241

Section 2241(c)(1) of Title 28 of the United States Code "applies to persons held 'in custody under or by color of the authority of the United States.'" Munaf, 128 S. Ct. at 2217 (citing § 2241(c)(1)). "An individual is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce' him. Id. (quoting Wales v. Whitney, 5 S. Ct. 1050, 1054 (1885); see also 28 U.S.C. § 2243 ("The writ ... shall be directed to the person having custody of the person detained")).

The extradition to Honduras of a person found in the United States is governed by the provisions of the federal extradition statutes, 18 U.S.C. § 3181 et seq., and the Treaty between the United States of America and the Republic of Honduras for extradition of fugitives.  A court certifying extradition considers whether it has jurisdiction to certify the extradition and jurisdiction over the individual against whom extradition is sought; whether there is a valid extradition treaty in effect; whether probable cause supports the charge; and whether the charge is covered by the treaty.  In re Extradition of Garcia, 825 F. Supp. 2d 810, 826-27 (S.D. Tex. 2011).  Upon finding sufficient

evidence to support extraditing the fugitive, the court then certifies him as extraditable to the Secretary of State, who ultimately decides whether to surrender him to the requesting country. 18 U.S.C. §§ 3184, 3186, 3196.

There is no direct appeal from a decision granting a certificate of extradition; the proper method of seeking review of a certification decision is through a petition for habeas corpus under 28 U.S.C. § 2241. *See* Balzan v. United States, 702 F.3d 220, 223 n.3 (5th Cir. 2012); *see also* Quintanilla v. United States, 582 F. App'x 412, 413-14 n.1 (5th Cir. 2014). The review of the certification determination is "quite narrow" and is limited "to determining 'whether the magistrate has jurisdiction, whether the offense charged is within the treaty, and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" Escobedo, 623 F.2d at 1101 (citing Fernandez v. Phillips, 45 S. Ct. 541 (1925)).

Article III of the Convention Against Torture ("CAT") provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." CAT, art. III, Dec. 10, 1984, 1465 U.N.T.S. 85 (1984). "The Convention is a non-self-executing treaty--by its own force,

it confers no rights that are enforceable in U.S. courts." Kapoor v. DeMarco, 132 F.4th 595, 602 (2d Cir. 2025) (citing Pierre v. Gonzales, 502 F.3d 109, 114 (2d Cir. 2007); 136 Cong. Rec. S17486-01, S17492 (daily ed. Oct. 27, 1990) ("[T]he provisions of Articles 1 through 16 of the Convention are not self-executing.")); *see also* Medellin v. Texas, 128 S. Ct. 1346, 1356 n.2 (2008) (explaining that "[w]hether such a treaty has domestic effect depends upon implementing legislation passed by Congress").

To implement the CAT, Congress enacted the FARR Act, which articulated the following policy of the United States:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

Pub. L. No. 105-277, div. G, Title XXII, § 2242(a), 112 Stat. 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231) ("FARRA" or "FARR Act"). Congress clarified FARRA in 2005 in the REAL ID Act, Pub. L. No. 109-13, § 106(a)(1)(B), 119 Stat. 231, 310 (2005) (codified at 8 U.S.C. § 1252(a)(4)), which amended FARRA § 2242(d) as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a

> petition for review filed with an appropriate court of appeals in accordance with this section [8 U.S.C. § 1252] shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhumane, or Degrading Treatment or Punishment, except as provided in subsection (e).

8 U.S.C. § 1252(a)(4)).[4]  In the FARR Act, "Congress directed the heads of the appropriate agencies to 'prescribe regulations to implement the obligations of the United States under Article 3.'" Kapoor, 132 F.4th at 602 (citing FARR Act § 2242(b)).

Pursuant to the FARR Act, the State Department promulgated the following regulations regarding claims under CAT in the extradition context.  Chapter 22 of the Code of Federal Regulations, Section 95.2 provides:

> (a)  Article 3 of the Convention imposes on the parties certain obligations with respect to extradition. That Article provides as follows:
>
> (1)  No State party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.
>
> (2)  For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the

---

[4] Subsection (e) provides limited judicial review of orders under section 1225(b)(1), a situation not relevant here.  See 8 U.S.C. §§ 1252(e), 1225(e).

State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

(b)     Pursuant to sections 3184 and 3186 of Title 18 of the United States Criminal Code, the Secretary is the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition. In order to implement the obligation assumed by the United States pursuant to Article 3 of the Convention, the Department considers the question of whether a person facing extradition from the U.S. "is more likely than not" to be tortured in the State requesting extradition when appropriate in making this determination.

22 C.F.R. § 95.2.  Section 95.1(d) defines "Secretary" to mean "Secretary of State and includes, for purposes of this rule, the Deputy Secretary of State, by delegation."  22 C.F.R. § 95.1.

## B.   Motion to Stay Legal Standard

A litigant seeking a stay bears the burden to show: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 129 S. Ct. 1749, 1761 (2009).  The party seeking a stay "must satisfy all of the requirements for a stay, including a

showing of a significant possibility of success on the merits."
Hill v. McDonough, 126 S. Ct. 2096, 2104 (2006).

## III. Discussion

In Martinez Guardado's first habeas petition, the Court dismissed any claims regarding the magistrate judge's certification decision with prejudice. *See* Martinez Guardado I. In addition, the Court held that the rule of non-inquiry constrains it from examining the substance of the torture issue on the merits because the determination as to whether "it is more likely than not" that the petitioner would be subjected to torture is under the exclusive purview of the Executive branch in the context of extradition. *See* id. at Doc. No. 9 at 8-10. The Court further noted that Martinez Guardado's claim regarding whether the Secretary of State complied with his statutory obligations when deciding the torture issue was not ripe because the Secretary had not made any decision regarding whether to extradite Martinez Guardado. The Court also reserved judgment on whether there was a limited due process right to review the Secretary's procedures if and when he decided that extradition was appropriate.

Martinez Guardado seeks to revisit the Court's previous determination that the rule of non-inquiry bars this Court from reviewing the factual basis of his torture claim, relying

13

principally on a concurring opinion in Trinidad y Garcia v. Thomas, 683 F.3d 952 (9th Cir. 2012), the Seventh Circuit's opinions in Venckiene v. United States, 929 F.3d 843 (7th Cir. 2019), and In re Burt, 737 F.2d 1477 (7th Cir. 1984), and dictum in Justice Souter's separate concurrence in Munaf, 128 S. Ct. at 2228. He also contends that the Government's submission of a letter certifying that the Secretary complied with his statutory obligations does not satisfy due process in reviewing the decision to surrender him for extradition. The Court addresses each claim in turn.

### A. The Court's role in determining whether it is "more likely that not" that the petitioner will be tortured if extradited to Honduras.

Martinez Guardado contends that this Court has jurisdiction to decide whether it is "more likely than not" that he will be subjected to torture by examining the factual basis for his CAT claims under the FARR Act. The Government argues that the FARR Act, by its express terms, deprives this Court of jurisdiction to consider the merits of his torture claims, and that the "rule of non-inquiry" otherwise bars the Court from considering torture claims as a violation of due process.

Regarding his claims under the FARR Act, Martinez Guardado concedes that several circuits have held that the REAL ID Act

14

amended the FARR Act to deprive this Court of jurisdiction over any CAT/FARR Act claim. *See* Kapoor v. DeMarco, 132 F.4th 595, 608 (2d Cir. 2025) (holding that "Section 1252(a)(4) contains a clear statement of congressional intent to bar all habeas jurisdiction over CAT claims, with narrowly delineated exceptions not relevant here"); Mironescu v. Costner, 480 F.3d 664 (4th Cir. 2007) (holding that the district court lacked jurisdiction over the extraditee's habeas petition under § 2242(d) of the FARR Act because the statutory language "plainly conveys that although courts may consider or review CAT or FARR Act claims as part of their review of a final removal order, they are otherwise precluded from considering or reviewing such claims"); and Omar v. McHugh, 646 F.3d 13, 19 (D.C. Cir. 2011) (explaining that "the FARR Act, as supplemented by the REAL ID Act of 2005," does not grant the "right to judicial review of conditions in the receiving country") (citing Kiyemba v. Obama ("Kiyemba II"), 561 F.3d 509, 514-15 (D.C. Cir. 2009)).

On the other hand, Martinez Guardado points out that the Ninth Circuit in Trinidad y Garcia held that "[n]either the REAL ID Act (8 U.S.C. § 1252(a)(4)) nor the FARRA (8 U.S.C. § 1231 note) repeals all habeas jurisdiction over Trinidad y Garcia's claims." 683 F.3d at 956. The Ninth Circuit recognized that "CAT and its implementing regulations are binding domestic law" with which the

Secretary must comply and make the torture determination. Id. It further concluded that an extraditee has a "narrow liberty interest: that the Secretary comply with [his] statutory and regulatory obligations." Id.

Even if the FARR Act does not expressly limit this Court's jurisdiction over torture claims, the rule of non-inquiry constrains this Court from second-guessing decisions that are within the Executive Branch's exclusive purview. Although not labeling it as "the rule of non-inquiry" per se, the Supreme Court has "recognized that it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments." Munaf v. Geren, 128 S. Ct. 2207, 2225 (2008). It has recognized that allegations of torture "are of course a matter of serious concern, but in the present context that concern is to be addressed by the political branches, not the Judiciary." Id. It further noted:

> The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." See The Federalist No. 42, p. 279 (J. Cooke ed. 1961) (J. Madison) ("If we are to be one nation in any respect, it clearly ought to be in respect to other nations."). In contrast, the political branches are well situated to consider sensitive foreign policy issues, such as whether there is a serious prospect of torture at the hands of an ally, and what to do about it if there is. As Judge Brown

16

noted, "we need not assume the political branches are oblivious to these concerns. Indeed, the other branches possess significant diplomatic tools and leverage the judiciary lacks."

Id. at 2226.

Likewise, the Fifth Circuit in Escobedo wrote that "[a]ssuming that the magistrate's decision is in favor of extradition, the Executive's discretionary determination to extradite the fugitive -- even one who is a United States national -- is not generally subject to judicial review." 623 F.2d at 1105. The Fifth Circuit added: "The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." Id. (citing and discussing Peroff v. Hylton, 563 F.2d 1099, 1102-03 (4th Cir. 1977), and other cases). The Fifth Circuit rejected Escobedo's argument that he would likely be tortured or killed if he were extradited, holding that "'the degree of risk to (Escobedo's) life from extradition is an issue that properly falls within the exclusive purview of the executive branch." Id. at 1107 (quoting Sindona v. Grant, 619 F.2d 167, 174 (2d Cir. 1980)).

Similarly, in the context of habeas proceedings challenging extradition based on conditions in the receiving country, several other circuit courts have held that the decision to extradite such a fugitive is within the exclusive purview of the Executive Branch.

17

*See, e.g.*, <u>Kapoor</u>, 132 F.4th at 610-13 (2d Cir. 2025) (noting that under the rule of non-inquiry, "fugitives . . . facing extradition have not traditionally been able to maintain a habeas claim on their anticipated treatment in a receiving country" and holding that the "historical tradition of refusing to consider petitioners challenging the conditions of the country requesting extradition means Kapoor does not present a claim implicating the type of habeas review protected by the Suspension Clause") (citing cases historically and traditionally applying the rule of non-inquiry); <u>Noeller v. Wojdylo</u>, 922 F.3d 797, 808 (7th Cir. 2019) ("Under the settled rule of non-inquiry, the executive branch has sole authority to consider such humanitarian considerations in deciding on extradition requests.")(citing <u>Hoxha v. Levi</u>, 465 F.3d 554, 563 (3d Cir. 2006)); <u>Santos v. Thomas</u>, 830 F.3d 987, 1007 n.9 (9th Cir. 2016) ("[T]he rule [of non-inquiry] bars the judiciary from preventing the surrender of a fugitive on the basis of humanitarian considerations once extradition has been certified, reserving that decision to the Secretary of State."); <u>Trinidad y Garcia v. Thomas</u>, 683 F.3d 952, 957 (9th Cir. 2012) (explaining that the rule of non-inquiry affects the *scope* of the inquiry but not the court's *jurisdiction* and that the "doctrine of separation of powers and the rule of non-inquiry block any inquiry into the substance of the Secretary's declaration"); <u>Omar</u>, 646 F.3d at 19 (D.C. Cir.

2011) ("[A]pplying what has been known as the rule of non-inquiry, courts historically have refused to inquire into conditions an extradited individual might face in the receiving country."); United States v. Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997) (explaining that "[m]ore than just a principle of treaty construction, the rule of non-inquiry tightly limits the appropriate scope of judicial analysis in an extradition proceeding" and that "courts refrain from 'investigating the fairness of a requesting nation's justice system,' [] and from inquiring 'into the procedures or treatment which await a surrendered fugitive in the requesting country'" (citations omitted)); Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir. 1990) ("It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds.").

In a similar vein, Justice Kavanaugh, while a judge on the D.C. Circuit, explained in a concurrence that "both Munaf and the deeply rooted 'rule of non-inquiry' in extradition cases require that we defer to the Executive's considered judgment that transfer is unlikely to result in torture" and that, "with respect to international transfers of individuals in U.S. custody, Munaf and the extradition cases have already struck the due process balance between the competing interests of the individual and the

Government." <u>Kiyemba v. Obama</u>, 561 F.3d 509, 517 (D.C. Cir. 2009) (Kavanaugh, J., concurring).

The jurisprudence set forth above demonstrates that historically and traditionally, the Executive Branch, through the Secretary of State, and not the courts, makes the factual determination regarding the torture issue, and such a determination is not subject to judicial review on the merits. *See* <u>Escobedo</u>, 623 F.2d at 1107. The rule of non-inquiry bars the Court from adjudicating Martinez Guardado's torture claim.

Martinez Guardado nonetheless relies on the concurrence in <u>Munaf</u> to assert a that a narrow exception to the rule of non-inquiry applies in this case. Justice Souter, joined by two other Justices, wrote in his concurrence:

> Nothing in today's opinion should be read as foreclosing relief for a citizen of the United States who resists transfer, say, from the American military to a foreign government for prosecution in a case of that sort, and I would extend the caveat to a case in which the probability of torture is well documented, even if the Executive fails to acknowledge it. Although the Court rightly points out that any likelihood of extreme mistreatment at the receiving government's hands is a proper matter for the political branches to consider, see ante at 2225-2226, if the political branches did favor transfer it would be in order to ask whether substantive due process bars the Government from consigning its own people to torture.

_Munaf_, 128 S. Ct. at 2228 (Souter, J., concurring).  The _Munaf_ concurrence added, "where federally protected rights [are threatened], it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."  _Id._ (citing _Bell v Hood_, 66 S. Ct. 773 (1946)).

While the concurrence in _Munaf_ counsels caution in applying the majority's holding in an "extreme case in which the Executive has determined that a detainee is likely to be tortured but decides to transfer him anyway," _id._, there is no indication here that the Secretary determined that Martinez Guardado is likely to be tortured and decided to transfer him anyway.  To the contrary, the Government's submissions reflect that the Secretary understands that "the United States has an obligation not to extradite a person to a country 'where there are substantial grounds for believing that he would be in danger of being subjected to torture,'" and that "this obligation involves consideration of 'whether a person facing extradition from the U.S. "is more likely than not" to be tortured in the State requesting extradition.'"  Doc. No. 15-1 at 1.  The documentation from the Secretary further confirms that the Secretary "complie[d] with its obligations under the Convention and its implementing statute and regulations."  _Id._ at 2.  The _Munaf_ concurrence does not suggest specifics regarding the degree of threat, what relief could be fashioned, or under what authority

and circumstances a court would contravene a decision that the Court in _Munaf_, in its opinion authored by Chief Justice John Roberts, unequivocally stated is within the purview of the political branches. This Court is bound by the holding in _Munaf_ and the Fifth Circuit's opinion in _Escobedo_ and finds that numerous sister circuit opinions following the rule of non-inquiry are also persuasive precedent.[5] Therefore, this Court may not revisit the factual basis of the Secretary's decision regarding his torture claim.

**B.    Whether the letter submitted by the Government suffices to show that the petitioner received due process in connection with the decision to surrender him for extradition.**

As explained above, the separation of powers and the rule of non-inquiry bar judicial review of the factual basis and substance of the Secretary's decision regarding Martinez Guardado's torture claim. To the extent that Martinez Guardado may have a "narrow liberty interest" in whether the Secretary of State complied with his statutory and regulatory obligations, the Government has submitted a letter from Attorney Advisor Noah L. Browne, Office of the Legal Advisor for Law Enforcement and Intelligence at the

---

[5] Conversely, the Court is not persuaded by the non-binding authority Martinez Guardado cites in the concurrence in _Trinidad y Garcia_, or the Seventh Circuit's dicta in _Venckiene_ and _In re Burt_, 737 F.2d 1477 (7th Cir. 1984).

United States Department of State, confirming that the Secretary did comply with his obligations. *See* Doc. No. 15-1.

In *Sridej v. Blinken*, 108 F.4th 1088, 1090 (9th Cir. 2024), the Ninth Circuit explained that it recognized in *Trinidad y Garcia* that "the 'CAT and its implementing regulations are binding domestic law' and that an extraditee 'possesses a narrow liberty interest' under the Due Process Clause in the Secretary of State complying with those regulations." *Id.* at 1091. *Sridej* further noted that the Ninth Circuit in *Trinidad y Garcia* "expressly held that '[t]he doctrine of separation of powers and the rule of non-inquiry block any inquiry into the substance of the Secretary's declaration.'" *Id.* (quoting *Trinidad y Garcia*, 683 F.3d at 957). Both *Trinidad y Garcia* and *Sridej* held that documentation from the Secretary of State that he complied with his statutory and regulatory obligations would be sufficient to end the inquiry and vindicate the extraditee's due process rights. *See Trinidad y Garcia*, 683 F.3d at 957; *Sridej*, 108 F.4th at 1093; *see also Rana v. Engleman*, No. 25-1053, 2025 WL 719820, at *2 (9th Cir. Feb. 21, 2025) (same).

Here, as in *Sridej* and *Rana*,[6] the Secretary of State has submitted documentation representing that he reviewed "all

---

[6] In *Trinidad y Garcia*, the Government also submitted a short declaration from the Secretary of State on remand. *See Trinidad y Garcia v. Benov*,

23

pertinent information, including [the Petitioner's] materials and filings submitted to the Secretary and the United States District Court for the Southern District of Texas" before deciding "to authorize [Petitioner's] surrender to Honduras, pursuant to 18 U.S.C. § 3186 and the Extradition Treaty." Doc. No. 15-1 at 1. The Secretary recognized his "obligation involves consideration of 'whether a person facing extradition from the U.S. "is more likely than not" to be tortured in the State requesting extradition.'" Id. The State Department letter confirmed that the Secretary did comply with his statutory and regulatory obligations. This ends the inquiry regarding Martinez Guardado's due process challenge to his extradition. Therefore, the petition for habeas corpus must be denied.

Concomitantly, because Martinez Guardado has not shown a substantial likelihood of success on the merits, his motion for a stay in large part will be denied; however, the Court grants a temporary STAY of surrender to extradition for seven (7) days from the date the Final Judgment is entered to allow the petitioner time to file a Notice of Appeal and any relevant motions in the United States Court of Appeals for the Fifth Circuit.

---

Civ. No. 2:08-cv-07719-MMM-CW, at Doc. No. 124 at 7-8 (C.D. Cal. Apr. 4, 2013). However, the district court later dismissed the case as moot when the receiving country dismissed the charges against Trinidad y Garcia. See id. at Doc. Nos. 137 (Notice of Dismissal of Charges); Doc. No. 151 (Dismissal Order Dated Oct. 2, 2013).

## IV.  ORDER

Based on the foregoing, it is hereby

**ORDERED** that Petitioner's Second Amended Motion for a Stay of Extradition/Surrender (Doc. No. 12) is **DENIED** and the habeas petition filed by Melvin Martinez Guardado is **DISMISSED** with prejudice; it is further

**ORDERED** that the Petitioner's Motion for a Temporary Stay (Doc. No. 12) is **GRANTED** in part, insofar as Petitioner's surrender to extradition is **STAYED** for seven (7) days from the date the Final Judgment is entered to allow Petitioner time to file a Notice of Appeal and any relevant motions in the United States Court of Appeals for the Fifth Circuit; and it is

**ORDERED** that all other pending motions, if any, are **DENIED as MOOT**.

The Clerk will enter this Order and provide a true copy to all parties of record.

SIGNED at Houston, Texas, on this 19TH day of August, 2025.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE